United States District Court
Southern District of Texas
**ENTERED**
January 08, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HUW PIERCE, *et al*, | § | CIVIL ACTION NO. |
| Plaintiffs, | § | 4:19-cv-01814 |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| AIRCRAFT FINANCE | § | |
| CORPORATION LLC, | § | |
| *et al*, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION DENYING
MOTION TO DISMISS AS TO PERSONAL JURISDICTION,
VENUE, AND, IN PART, FAILURE TO STATE A CLAIM**

This case relates to the purchase of an aircraft by Plaintiffs Huw and Jennifer Pierce through an entity they control, Plaintiff Glencove Holdings LLC. They allege that nonparty Steve Bloom, while acting as their agent, arranged a transaction where he would get a secret $250,000 "flip" profit by purchasing the aircraft for less than Glencove paid for it.

Defendants Martin Ormon and Aircraft Finance Corporation, LLC filed a motion to dismiss the amended complaint for lack of personal jurisdiction, improper venue, and failure to state a claim under Rules 12(b)(2), (b)(3), and (b)(6) of the Federal Rules of Civil Procedure. Dkt 38.

The motion is granted in part and denied in part. It is denied as to personal jurisdiction and venue. As to failure to state a claim, it is granted only as to the claims for conspiracy to commit fraud with Defendant TruStone Financial Credit Union and for aiding and abetting. The claims for fraudulent inducement, fraud by nondisclosure, and conspiracy to commit fraud with Bloom will proceed.

1. Background

The Pierces are Texas citizens. Several of their business entities are also Plaintiffs here, with each (including Glencove) organized under the laws of Texas and having their principal places of business in Houston. Dkt 29 at ¶ 1.

The Pierces were interested in purchasing an aircraft and initially engaged an aircraft broker to assist them. Id at ¶ 9. Ormon is a resident of South Carolina, and Aircraft Finance is a Wyoming LLC with its principal place of business in California. Id at ¶¶ 2–3. The Pierces learned of them during their search for an aircraft. Ormon referred Steve Bloom to the Pierces, who later inquired about serving as their agent. After the six-month contract between the Pierces and their prior broker expired, they entered into an agreement with Bloom's company, Bloom Business Jets, Inc, which has offices in Colorado. Id at ¶¶ 10, 12. He agreed to serve as their agent for a disclosed fee of the lesser of 3.75% or $121,000. See Dkt 29-1 at 2.

Bloom succeeded in finding an aircraft for the Pierces that was owned at the time by Loretto Aviation LLC. He negotiated with Loretto to purchase the aircraft through an entity controlled by Bloom, Ormon, and Aircraft Finance called Big Horn Exploration. Bloom designed the transaction so that Big Horn Exploration would buy the aircraft and then immediately sell it to Glencove, netting an undisclosed flip-profit of $250,000. Dkt 29 at ¶¶ 13–15.

TruStone is a federal credit union with its primary office located in Minnesota. Id at ¶ 4. The Pierces financed the transaction with funds from TruStone. They didn't apply for credit with TruStone directly but instead went through Aircraft Finance. The agreement stated that Aircraft Finance would receive a one percent origination fee but didn't disclose the flip-profit. Id at ¶¶ 16–17.

The loan agreement with TruStone required the Pierces to individually guarantee the loan alongside their other Texas-based entities, Plaintiffs The Kipling School, Inc, Kipling Street Academy, Inc, and Mulberry Street Real Estate Ventures, Inc. The agreement also required the Pierces to join a charitable foundation associated with TruStone, make a down payment of

$1 million, conduct costly repairs to the aircraft, and set up automatic payments with their bank. Id at ¶ 21.

Bloom also acted as the appraiser for the aircraft loan, despite representing that he had no financial interest in the transaction. TruStone had knowledge of this through the closing statement, which disclosed the $120,000 commission to Bloom. Id at ¶¶ 22–23.

Of the flip-profit, $90,000 was paid to Aircraft Finance, $130,366.34 was paid to Bloom Business Jets, and $30,000 was paid to Bloom's lawyer. Id at ¶ 30. After learning this detail of the financing, Plaintiffs offered to rescind the transaction and return the aircraft to Defendants, who ignored the offer. Id at ¶ 35. Plaintiffs are continuing to pay the note to maintain the *status quo* pending final judgment. Id at ¶ 63.

Plaintiffs initially brought this action in Texas state court in April 2019. Dkt 1-1 at 7–14. TruStone, Aircraft Finance, and Ormon removed the action. Dkt 1. TruStone and former Defendant Elia Griffith then moved to dismiss the initial complaint, as did Aircraft Finance and Ormon. Dkts 11, 18. Plaintiffs moved for leave to amend their complaint, which was granted. Dkts 26, 27.

Plaintiffs then filed the operative amended complaint. Dkt 29. In it, they bring claims against Aircraft Finance and Ormon for fraudulent inducement and fraud by nondisclosure. Id at ¶¶ 38–45. They assert that TruStone is vicariously liable for the acts of Aircraft Finance and Ormon. Id at ¶¶ 46–49. And they bring claims against all Defendants for conspiracy to perpetrate a fraud between Aircraft Finance, Ormon, and TruStone; aiding and abetting the tortious conduct of Bloom; and conspiracy to help Bloom. Id at ¶¶ 50–58.

Aircraft Finance and Ormon seek to dismiss the claims against them for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6). Dkt 38. TruStone likewise moved to dismiss the claims against it and alternatively sought a transfer of venue. Dkt 43. But Plaintiffs and TruStone have since provided notice of the final and binding settlement of their dispute, with dismissal papers to follow funding of the agreement. Dkt 82.

### 2. Personal jurisdiction

Aircraft Finance and Ormon challenge personal jurisdiction over them in Texas as improper under Rule 12(b)(2). They argue that they didn't have any significant contacts here prior to this litigation, the claims against them don't arise out of any of their alleged contacts with the state, and the exercise of personal jurisdiction would offend traditional notices of fair play and substantial justice. Dkt 38 at 11–18.

#### a. Legal standard

A federal court may exercise jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising that jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *McFadin v Gerber*, 587 F3d 753, 759 (5th Cir 2009) (citation omitted). The long-arm statute of Texas provides that a nonresident "does business" in Texas and so is subject to service and action in Texas if he, she, or it "commits a tort in whole or in part in this state." Texas Civil Practice and Remedies Code §§ 17.041–17.045. The Fifth Circuit holds that this statute confers jurisdiction to the limits of due process. *Latshaw v Johnston*, 167 F3d 208, 211 (5th Cir 1999) (citation omitted). This means that "the two-step inquiry collapses into one federal due process analysis." *Johnson v Multidata System International Corp*, 523 F3d 602, 609 (5th Cir 2008) (citation omitted).

Federal due process permits personal jurisdiction over a nonresident defendant who has *minimum contacts* with the forum state, subject to the limit of not offending "traditional notions of fair play and substantial justice." Ibid (citation omitted). Such contacts may establish either general or specific jurisdiction.

A federal court has *general jurisdiction* over a nonresident defendant "to hear any and all claims" if that defendant's contacts with the state are so "'continuous and systematic'" as to render it "essentially at home" in the forum state. *Daimler AG v Bauman*, 571 US 117, 127 (2014), quoting *Goodyear Dunlop Tires Operations SA v Brown*, 564 US 915, 919 (2011). This is a difficult showing to make, requiring "extensive contacts between a defendant and

4

a forum." *Johnson*, 523 F3d at 609, quoting *Submersible Systems Inc v Perforadora Central SA*, 249 F3d 413, 419 (5th Cir 2001).

A federal court has *specific jurisdiction* over a nonresident defendant to adjudicate "'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 US at 919 (citation omitted). It exists "when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Associates Inc v Coastal Power Production Co*, 517 F3d 235, 243 (5th Cir 2008), quoting *Panda Brandywine Corp v Potomac Electric Power Co*, 253 F3d 865, 868 (5th Cir 2001). The defendant's contacts with the forum "must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *ITL International, Inc v Constenla, SA*, 669 F3d 493, 498 (5th Cir 2012), quoting *Burger King Corp v Rudzewicz*, 471 US 462, 475 (1985). But even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." Id at 498–99.

Proof by a preponderance of the evidence isn't required. *Johnson*, 523 F3d at 609 (citation omitted). The plaintiff meets its burden by presenting a *prima facie* case that personal jurisdiction is proper. *Quick Techs Inc v Sage Group PLC*, 313 F3d 338, 343 (5th Cir 2002) (citation omitted). Once the plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof then shifts to the defendant to show that the assertion of jurisdiction is "unfair and unreasonable." *Sangha v Navig8 ShipManagement Private Ltd*, 882 F3d 96, 102 (5th Cir 2018), citing *Wien Air Alaska, Inc v Brandt*, 195 F3d 208, 215 (5th Cir 1999). The Fifth Circuit has established five factors that a reviewing court should use to determine whether jurisdiction is fair and reasonable, being:

- o *First,* the burden on the nonresident defendant of having to defend itself in the forum;
- o *Second,* the interests of the forum state in the case;
- o *Third,* the interest of the plaintiff in obtaining convenient and effective relief;

5

- - *Fourth,* the interest of the interstate judicial system in the most efficient resolution of controversies; and
  - *Fifth,* the shared interests of the states in furthering fundamental social policies.

*Sangha*, 882 F3d at 102 (citation omitted).

The reviewing court must accept as true uncontroverted allegations in the plaintiff's complaint. *Johnson*, 523 F3d at 609 (citation omitted). But the district court isn't required "to credit conclusory allegations, even if uncontroverted." *Panda*, 253 F3d at 869. The court may also receive "'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in the jurisdictional analysis." *Little v SKF Serige AB,* 2014 WL 710941, *2 (SD Tex), quoting *Walk Haydel & Associates*, 517 F3d at 241. Conflicts between any facts contained in the affidavits or other evidence submitted by the parties must be resolved in favor of the plaintiff. *Johnson*, 523 F3d at 609 (citation omitted).

> b. Analysis

Plaintiffs don't argue in favor of the exercise of general jurisdiction over Ormon and Aircraft Finance. But specific jurisdiction exists, they say, because their tort claims arise from intentional misrepresentations and other conduct that Ormon and Aircraft Finance directed towards Texas. Dkt 50 at 7–8.

This is a tort case. The decision by the Supreme Court in *Walden v Fiore*, 571 US 277, 280 (2014), provides important context. Nevada plaintiffs there sued an out-of-state defendant in Nevada for an allegedly unlawful search while they were in Georgia preparing to board a plane bound for Nevada. Id at 280. The Supreme Court considered whether the Nevada court could exercise personal jurisdiction over the defendant on the basis that he knew his allegedly tortious conduct in Georgia would affect the plaintiffs, who had connections to Nevada. Id at 279. It explained, "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." Id at 290. The inquiry is thus into "the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." Id at 285 (citation omitted). Mere injury to a forum

6

resident doesn't alone constitute a sufficient connection to the forum. Id at 290.

Plaintiffs rely on *Lewis v Fresne*, 252 F3d 352 (5th Cir 2001). Dkt 50 at 9. The Fifth Circuit there held that a single phone call was enough to establish personal jurisdiction when the subject call gave rise to the asserted intentional tort. *Lewis,* 252 F3d at 358–59. Aircraft Finance and Ormon argue that *Lewis* was decided prior to *Walden*, which they assert worked such a fundamental change to the assessment of specific jurisdiction that merely communicating with a plaintiff in the forum state isn't sufficient to establish jurisdiction. Dkt 55 at 6. But *Walden* and *Lewis* aren't incompatible. Indeed, the Fifth Circuit recently cited *Lewis* in a post-*Walden* decision—*Trois v Apple Tree Auction Center, Inc*, 882 F3d 485, 491 n 6 (5th Cir 2018). And that case likewise supports the exercise of personal jurisdiction here.

In *Trois*, a Texas citizen asserted claims in Texas for breach of contract and fraudulent misrepresentation against Ohio citizens. Id at 487. The president of the defendant corporation made the alleged fraudulent misrepresentation during a conference call from Ohio to Texas. Id at 487–88. The defendant corporation didn't initiate the conference call, but its president "was the key negotiating party who made representations regarding his business" during the call. Id at 491. The Fifth Circuit thus determined that the "defendants should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations." Ibid. It also noted that "the considerations for personal jurisdiction over fraud claims are different from those in a straight contract claim." Id at 492. But Plaintiffs allege fraud here, making applicable the jurisdictional analysis in *Trois*. And as there, Defendants here intentionally reached out to Texas and made representations regarding their business—representations that led to this litigation. 882 F3d 485 at 492; see Dkt 50 at 11–16. This, the Fifth Circuit holds, is sufficient to establish personal jurisdiction.

Aircraft Finance and Ormon rely on *Sangha v Navig8 ShipManagement Private Ltd* to illustrate that neither has sufficient minimum contacts with Texas to confer specific personal

7

jurisdiction. Dkt 38 at 12–13, citing 882 F3d at 99, 103. The defendant ship-management company in *Sangha* didn't renew an employment contract with the plaintiff, who then secured new employment with another such company. 882 F3d at 98–99. When his new employer tasked him with maneuvering a ship-to-ship transfer of bunker fuel alongside his former vessel in the Gulf of Mexico, the defendant emailed the plaintiff's current employer to request that he not be involved with the transfer—after which the new employer terminated him. Id at 99. The plaintiff was removed from his employer's vessel at the Port of Houston, and he brought various claims in Texas against the defendant that sounded in tort. Ibid. But his new employment contract wasn't formed or signed in Texas. Id at 103 n 2. And the defendant's representatives were located outside the United States when they sent the subject emails to the plaintiff's new supervisor in Alabama. Id at 103. The Fifth Circuit found those email communications insufficient to exercise jurisdiction over the defendant in Texas, even though the plaintiff was terminated and removed from his employer's vessel at the Port of Houston. Id at 99, 103. That contact with Texas was, instead, "nothing more than fortuitous." Id at 104 n 3.

The facts here are simply different. Plaintiffs allege numerous instances where Ormon and other Aircraft Finance employees intentionally reached out to the Pierces in Texas through numerous phone calls, text messages, and emails. See Dkt 29 at ¶ 37 (listing instances of communication related to the transaction); see also Dkt 50 at 11–16 (listing Aircraft Finance and Ormon alleged contacts with Texas). The fraud claim arises directly out of those communications. The intentional nature of this conduct and its connection to the tort cause of action is sufficient to establish personal jurisdiction. For example, see *Halcyon Biomedical Inc v Glatt Air Techniques Inc*, 2019 WL 2420232, *6 (SD Tex) (slip copy) (citation omitted).

Aircraft Finance and Ormon also argue that any fraud was exclusively in the selection and sale of the aircraft. See Dkt 38 at 17. They attempt by this to distinguish communications to establish the financing from the fraud itself. But depicting the underlying facts as involving separate purchasing and financing

transactions is an impermissible attempt to recast Plaintiffs' allegations. Plaintiffs allege a continuous scheme to profit from the purchase and financing of an aircraft. Dkt 29. This includes allegations that Ormon and Aircraft Finance omitted or misrepresented their $90,000 interest in the flip-profit throughout the financing process. Id at ¶¶ 14–15. The deal was dependent upon financing—meaning that the $250,000 flip-profit was, too. Id at ¶¶ 28–30. These allegations must be accepted in the current posture. See *Johnson*, 523 F3d at 609.

Aircraft Finance and Ormon also make several arguments within a span of two paragraphs as to why this Court's exercise of personal jurisdiction over them would be unreasonable and offend traditional notions of fair play and substantial justice. None have merit.

*First,* they argue that neither of them is domiciled in Texas, thus making travel to and litigation in Texas "burdensome, inconvenient, and costly" for them. Dkt 38 at 17. This may indeed impose a burden, but they suggest nothing that distinguishes their alleged burden here from the burdens imposed on any other out-of-state defendant. And "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wien Air Alaska,* 195 F3d at 215.

*Second,* they argue that Texas doesn't have an interest in adjudicating this dispute because Aircraft Finance doesn't have a place of business in Texas, Ormon isn't a Texas resident, and none of the other Defendants are Texas residents or entities. Dkt 38 at 17–18. Overlooked is the obvious point that the harm suffered by Plaintiffs *in* Texas gives rise to the interest *of* Texas in protecting its residents and providing them a forum. See *Telephone Audio Products, Inc v Smith*, 1998 WL 159932, \*3 (ND Tex). That Defendants are otherwise unaffiliated with Texas is irrelevant.

*Third,* they argue that the interest of Plaintiffs in "obtaining convenient and effective relief" doesn't require suit to be filed in Texas because they "have been involved in years of litigation in Colorado." Dkt 38 at 18. But Plaintiffs reside in Texas. They didn't give up their rights to litigate in Texas by participating in—or even filing—lawsuits in another state.

*Fourth,* they argue that "the interests of several states would not be served by adjudicating the case in Texas because there are several states that have a stronger interest in this case." Dkt 38 at 18. But they don't identify these other purportedly interested states or explain their respective interests. Such conclusory assertions are unavailing.

The motion to dismiss for lack of personal jurisdiction over Ormon and Aircraft Finance will be denied.

3. Venue

Aircraft Finance and Ormon challenge venue as improper under Rule 12(b)(3). They argue that they don't reside in Texas, a substantial part of the events giving rise to the Plaintiffs' claims didn't occur in Texas, and the parties are already engaged in litigation in Colorado. Dkt 38 at 18.

a. Legal Standard

As to venue generally, 28 USC § 1391(b) provides:

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Venue is proper if the case falls within any one of these three categories. *Atlantic Marine Construction Co v United States District Court*, 571 US 49, 55–56 (2013). A respected treatise notes that "the weight of judicial authority appears to be that when the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue." Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure* § 3826 (West October 2020 update). Most district courts

within the Fifth Circuit agree. See *Galderma Laboratories, LP v Teva Pharmaceuticals USA, Inc*, 290 F Supp 3d 599, 605 (ND Tex 2017) (collecting cases). But the Fifth Circuit hasn't affirmatively held that the plaintiff bears the burden, and some district courts have reached the opposite conclusion. For example, see *LAS Enterprises, Inc v Accu-Systems, Inc*, 2011 WL 6697043, *4 (ED La 2011); *Roach v Bloom*, 2009 WL 667218, *2 (ND Tex 2009).

The majority view is by far the more persuasive. And so, where the case involves multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant. *Collins v Doe*, 2012 WL 1414246, *3 (SD Tex 2012); see also FRCP 19(a)(3) (requiring dismissal of any objecting, joined party where venue is improper).

b. Analysis

Plaintiffs justify venue solely under 28 USC § 1391(b)(2). See Dkt 53 at 20–21. Dispositive here, the Fifth Circuit in *Trois* found venue to be proper in Texas when a significant portion of the misrepresentations occurred on a phone call while the plaintiff was in Texas. *Trois*, 882 F3d at 493–94.

Venue is likewise proper here. This has already been addressed above as to personal jurisdiction. The record at this juncture shows that Ormon and Aircraft Finance employees intentionally reached out to the Pierces in Texas through phone calls, text messages, and emails, and Plaintiffs allege that these included fraudulent representations at issue in this litigation. Dkt 50 at 19; see also id at 11–16.

A motion to transfer venue pursuant to 28 USC § 1404(a) would involve a more flexible standard, allowing consideration of a variety of equitable public and private factors. For example, see *In re Volkswagen of America, Inc*, 545 F3d 304, 315–16 (5th Cir 2008); *Total Safety US, Inc v Knox*, 2019 WL 7042114, *2 (SD Tex). But Aircraft Finance and Ormon bring no such motion here.

4. Failure to state a claim

Aircraft Finance and Ormon contend that Plaintiffs haven't alleged any of the claims against them with the level of specificity required under Rule 9(b). Dkt 38 at 18–24. They are correct as to

11

conspiracy with TruStone. The aiding-and-abetting claim also isn't recognized under Texas law. The other claims will proceed.

a. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 US at 678, quoting *Twombly*, 550 US at 557.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker*, 938 F3d at 735. The court must also generally limit itself to the contents of the pleadings and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014).

Rule 9(b) further requires parties "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake," while allowing "malice, intent, knowledge, and other conditions of a person's mind" to "be alleged generally." This

means that the pleader in an action for fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v WMX Technologies, Inc*, 112 F3d 175, 177 (5th Cir 1997). Or more simply stated, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *US v Columbia/HCA Healthcare Corp*, 125 F3d 899, 903 (5th Cir 1997), quoting *Williams*, 112 F3d at 179.

    b. Fraudulent inducement

A primary aspect of fraud under Texas law requires the plaintiff to show that the defendant made a material representation to the plaintiff that was false. *Shandong Yinguang Chemical Industries Joint Stock Co v Potter*, 607 F3d 1029, 1032–33 (5th Cir 2010), citing *Ernst & Young LLP v Pacific Mutual Life Insurance Co,* 51 SW3d 573, 577 (Tex 2001).

Aircraft Finance and Ormon argue that the fraudulent-inducement claim should be dismissed because Plaintiffs don't allege specific, affirmative, fraudulent statements or explain why the statements were fraudulent. Dkt 38 at 19–20. To the contrary, the amended complaint is quite clear. Plaintiffs assert that the fraud was in stating that Aircraft Finance would only receive one percent of the loan amount when in fact it would receive an additional $90,000. Dkt 29 at ¶¶ 17, 28. This both specifies a fraudulent misstatement and explains why it was fraudulent.

This fraudulent-inducement claim will proceed.

    c. Fraud by nondisclosure

Texas courts "have consistently held that fraud by nondisclosure . . . requires proof of all of the elements of fraud by affirmative misrepresentation . . . ." *United Teacher Associates Insurance Co v Union Labor Life Insurance Co*, 414 F3d 558, 567 (5th Cir 2005) (citations omitted). This means that the plaintiff must allege facts showing that:

- o *First,* a material misrepresentation was made;
- o *Second,* it was false when made;
- o *Third,* the speaker either knew it was false, or made it without knowledge of its truth;

13

- - *Fourth,* the speaker made it with the intent that it should be acted upon;
  - *Fifth,* the party acted in reliance; and
  - *Sixth,* the plaintiff was injured as a result.

*Fluorine On Call, Ltd v Fluorogas Ltd*, 380 F3d 849, 858 (5th Cir 2004).

When the claim is fraud by nondisclosure, the plaintiff can prove the first element "by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teacher*, 414 F3d at 567. Such a duty arises in Texas only "when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent." *Rio Grande Royalty Co v Energy Transfer Partners, LP*, 786 F Supp 2d 1202, 1208 (SD Tex 2009), citing *In re International Profit Associates Inc*, 274 SW3d 672, 678 (Tex 2009). These include situations where:

- - *First,* the parties have a confidential or fiduciary relationship;
  - *Second,* one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth;
  - *Third,* one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or
  - *Fourth,* one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak.

*Solutioneers Consulting Ltd v Gulf Greyhound Partners Ltd*, 237 SW3d 379, 385 (Tex App—Houston [14th Dist] 2007), citing *Insurance Co of North America v Morris*, 981 SW2d 667, 674 (Tex 1998); see also 37 *Corpus Juris Secundum Fraud* §§ 30–33 (West November 2020 update).

Aircraft Finance and Ormon argue that they lacked any duty to disclose the flip transaction to Plaintiffs. Dkt 38 at 20–21. But they at a minimum made a partial disclosure regarding how much they would be paid for securing the financing of the aircraft—stating they would receive only one percent of the loan amount,

roughly $25,000. Dkt 29 at ¶ 28. Pertinent to the fourth category above, that partial disclosure could convey the false impression that it was the only fee that they would receive. And pertinent to the second category, it was arguably not the truth, the whole truth, and nothing but the truth. In short, after Defendants chose to state how much they would receive from the transaction, they were obligated to similarly disclose the flip-profit.

The fraud-by-nondisclosure claim will proceed.

### d. Conspiracy

Civil conspiracy under Texas law requires the plaintiff to show, among other things, that a combination of two or more persons exists, they seek to accomplish an object or course of action, and they reach a meeting of the minds on the object or course of action. *First United Pentecostal Church of Beaumont v Parker*, 514 SW3d 214, 222 (Tex 2017), citing *Tri v JTT*, 162 SW3d 552, 556 (Tex 2005).

A cause of action for conspiracy to commit fraud is typically derivative of the underlying fraud claim. For example, see *Edwards v Certain Underwriters at Lloyds*, 2010 WL 5391275, *3 (SD Tex). The pleading standard for a conspiracy claim is thus equivalent to the pleading standard for a fraud claim, including as to Rule 9. And so, a plaintiff alleging a conspiracy to commit fraud "must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *United States v Kanneganti*, 565 F3d 180, 193 (5th Cir 2009), quoting *FC Investment Group LC v IFX Markets Ltd*, 529 F3d 1087, 1097 (DC Cir 2008).

*As to conspiracy with TruStone.* To qualify as a conspiracy, the Fifth Circuit holds, "'The parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement.'" *Wackman v Rubsamen*, 602 F3d 391, 408 (5th Cir 2010), quoting *Triplex Communications, Inc v Riley,* 900 SW2d 716, 719 (Tex 1995). Aircraft Finance and Ormon argue that Plaintiffs allege no meeting of the minds or agreement between Aircraft Finance and Ormon (on the one hand) and TruStone (on the other) to effectuate a fraud. Dkt 38 at 21–22.

Plaintiffs allege that Aircraft Finance and TruStone worked together to establish the financing transaction, that they

15

communicated, and that TruStone had actual knowledge of the back-to-back transactions. Dkt 29 at 26. But they elsewhere allege that "undisclosed 'flip' transactions are apparently not uncommon in the industry." Dkt 29 at ¶ 33. This makes it particularly important to specify that TruStone was, in fact, aware of and participated in the fraudulent plan. But Plaintiffs allege only that TruStone profited by making a loan that was $250,000 higher than it otherwise should have been, but without allegation that they shared in the flip-profit. Id at 32.

Working cooperatively on a plausibly routine financing agreement (from TruStone's perspective) is different in kind from working together to defraud Plaintiffs. At the end of the day, the complaint simply doesn't allege a meeting of the minds as between Aircraft Finance, Ormon, and Trustone where they plotted and agreed to a fraud on Plaintiffs. The allegations are thus insufficient as pleaded. For example, see *Marlin v Moody National Bank, NA*, 248 F Appx 534, 538–39 (5th Cir 2007).

This aspect of the conspiracy claim will be dismissed.

*As to conspiracy with Bloom.* Civil conspiracy "is sometimes used by an injured plaintiff as a basis for establishing joint and several tort liability among several parties." *Carroll v Timmers Chevrolet Inc*, 592 SW2d 922, 925 (Tex 1979); see also *Helping Hands Home Care, Inc v Home Health of Tarrant County, Inc*, 393 SW3d 492, 506 (Tex App—Dallas 2013, pet denied). Aircraft Finance and Ormon seek to build on this principle, arguing that they cannot be found liable for conspiring with Bloom where Plaintiffs haven't asserted any claims against him in this lawsuit. Dkt 38 at 22.

Aircraft Finance and Ormon cite no authority for their argument that Bloom must be a party before they can be held liable for conspiring with him. The argument isn't at all supported by Rules 19 and 20 of the Federal Rules of Civil Procedure, concerning required and permissive joinder of parties. And Aircraft Finance and Ormon don't present any request to join Bloom as a party.

Regardless, district courts have discretion under Rule 19(a)(2) in assessing whether a party is necessary. *Moss v Princip*, 913 F3d 508, 514–15 (5th Cir 2019). A tortfeasor "with the usual 'joint-and-several' liability is merely a permissive party to an

16

action against another with like liability.'" *Temple v Synthes Corp*, 498 US 5, 7 (1990), citing FRCP 19(a) Advisory Committee Note (1966). The Supreme Court has also long held that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Ibid (citations omitted).

A civil-conspiracy claim under Texas law may likewise proceed even in the absence of one of the coconspirators. This is because a defendant's liability for civil conspiracy "depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *PrevMED, Inc v MNM-1997, Inc*, 2017 WL 785656, \*14 (SD Tex), citing *Tilton v Marshall*, 925 SW2d 672, 681 (Tex 1996). Put simply, a plaintiff needn't name all coconspirators as defendants to pursue a conspiracy claim against some. *United Biologics, LLC v Allergy & Asthma Network*, 2019 WL 830967, \*2 (WD Tex), citing *Goldstein v Mortenson*, 113 SW3d 769, 779 (Tex App—Austin 2003, no pet); see also *Xie Law Offices LLC v Nguyen & Chen LLP*, 2018 WL 3468718, \*1 (SD Tex).

Aircraft Finance and Ormon also argue that Plaintiffs fail to plead a requisite "meeting of the minds" with Bloom. Dkt 38 at 22. Plaintiffs don't directly address this in response. But their complaint alleges that Aircraft Finance, Ormon, and Bloom each had knowledge of the flip-profit, each received a portion of the flip-profit, and each failed to disclose the flip-profit at various points. Dkt 29 at ¶¶ 29–30. And that profit was only possible due to the use of nonparty Big Horn Exploration, which Aircraft Finance, Ormon, and Bloom "owned, controlled, or otherwise had a financial interest." Dkt 29 at ¶ 14.

This aspect of the conspiracy claim will proceed.

### e. Aiding and abetting

The Supreme Court of Texas in *First United Pentecostal Church of Beaumont v Parker* stated that Texas has "never expressly recognized a distinct aiding and abetting cause of action . . . ." 514 SW3d 214, 225 (Tex 2017) (citation omitted). The briefing of the parties proceeds on a contrary assumption that such a cause of action is viable. Compare Dkt 38 at 23–24, with Dkt 50 at 26–38. And they discuss the pertinence of earlier decisions by the Texas Supreme Court that seemingly recognize it as such. For

example, see *Kinzbach Tool Co v Corbett-Wallance Corp*, 160 SW2d 509, 514 (Tex 1942); *City of Fort Worth v Pippen*, 439 SW2d 660, 665 (Tex 1969), and *Juhl v Airington*, 936 SW2d 640, 644 (Tex 1996); see also *McKinnon & Van Meter v Reliance Lumber Co*, 63 Tex 30, 31 (1885).

Neither party addresses the recent decision of *In re DePuy Orthopaedics Inc, Pinnacle Hip Implant Products Liability Litigation*, 888 F3d 753 (5th Cir 2018). The Fifth Circuit there observed that "a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts." Id at 781 (citation omitted). And upon consideration of these cases cited by the parties, it held that any prior suggestions of validity to the cause of action "would have to yield to the court's more timely and direct pronouncements to the contrary." Id at 782. Judge Gray Miller recently dismissed an aiding-and-abetting cause of action under Texas law on this reasoning, stating that it was "inappropriate for this court to recognize the claim when the Texas Supreme Court has not yet done so." *Garcia v Vasilia*, 2019 WL 4105559, *11 (SD Tex).

The aiding-and-abetting claim will be dismissed.

### f. Potential for repleading

A district court "should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). The Fifth Circuit holds that this "'evinces a bias in favor of granting leave to amend.'" *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006) (citation omitted). But the decision whether to grant leave to amend is within the sound discretion of the district court. *Pervasive Software Inc v Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012) (citation omitted). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 2020 WL 4558954, *7 (5th Cir), citing *Smith v EMC Corp*, 393 F3d 590, 595 (5th Cir 2004).

Plaintiffs moved for leave to amend when faced with motions to dismiss their original complaint. Dkt 26. That motion was granted. Dkt 27. Plaintiffs then filed the operative amended complaint. Dkt 29. They will not be permitted to amend again as to their claim of conspiracy to commit fraud with TruStone. And

any further amendment of the aiding-and-abetting claim would be futile. Both of these claims will be dismissed with prejudice.

5. Conclusion

The motion to dismiss the amended complaint by Defendants Aircraft Financial Corporation and Martin Ormon is GRANTED IN PART and DENIED IN PART. Dkt 38.

The motion is GRANTED with respect to the claims for conspiracy to commit fraud with TruStone Financial Credit Union and for aiding and abetting. Those claims are DISMISSED WITH PREJUDICE.

The motion is DENIED with respect to lack of personal jurisdiction and improper venue. And it is DENIED with respect to the claims for fraudulent inducement, fraud by nondisclosure, and conspiracy to commit fraud with Steve Bloom.

SO ORDERED.

Signed on January 8, 2021, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge